**People of the State of Illinois, Plaintiff-Appellee, v. William Frazier, Defendant-Appellant.**

Gen. No. 50,352.

First District, First Division.

October 18, 1965.

Michael L. Weissman, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, William Frazier, appeals from a bench trial conviction for the crime of robbery. He contends the conviction should be reversed because there is no evidence that property was taken by force or the threat of the imminent use of force other than the testimony of the complaining witness "whom the court characterized as being unworthy of belief"; because the court "specifically found that there was no taking of property by force"; because the admission into evidence of the currency involved "allegedly taken from the

complaining witness" did not conclusively establish the fact of the crime of robbery, and was prejudicial; because the court erred in allowing an unsworn witness to testify; and because the conduct of the trial judge and the state's attorney deprived him of a fair and impartial trial.

The complainant, Joe Wright, testified that on September 23, 1963, he returned to his car at about 3:45 a. m., and found defendant Frazier in the front seat and a codefendant, Robert Curry, in the back seat. When he entered the car Frazier took from him a $10 and a $5 bill which he had in a coat pocket. Curry then grabbed him around the neck, hit him on the jaw and knocked him out of the car. On cross-examination Wright said that after the money was taken and he was out of the car, Frazier said that "I was a nice guy and he didn't want to do too much to me." Frazier and Curry then took off with the car. The complainant proceeded to a police station. Later at the 12th District police station he identified both Frazier and Curry in a line-up of about six persons. He also saw police officer Sieczkowski remove one of the bills from "underneath" the hat of one of the men. Complainant stated that "they admitted they took the car but they didn't admit they took any money"; that at that time he had his head bandaged but that he was not drunk nor had he been beaten up earlier by a group of boys while in a lounge.

Officer Ronald Sieczkowski testified that about 3:45 or 4 a. m. on that day, while alone in a squad car on a routine patrol, he observed a vehicle being parked in an alley just east of Damen Avenue between Washington and Warren Boulevards. He aimed the spotlight at the vehicle and had the two occupants of the car, Frazier and Curry, step out. Frazier told him the car belonged to his father-in-law and that they were in the vicinity to buy liquor because the taverns in his

neighborhood were closed. Calling for a radio check he learned that the vehicle had been taken from the complainant. He notified the 11th District that he had the vehicle with its occupants and requested complainant be brought to the 12th District. At approximately 4:30 or 4:45 a. m. complainant arrived and picked out Frazier and Curry from a lineup of about seven men. The officer searched the two men and in the lining of Frazier's hat found a $10 bill. In Curry's hat lining he found a $5 bill. The two men refused to make any comment outside of the fact that they did take the vehicle but did not rob the complainant. On cross-examination the officer said Frazier had some loose change in his pocket and a $10 bill secreted in the lining of his hat. He did not recall that he had three $1 bills which he gave back to Frazier. The $10 and $5 bills were offered in evidence and since defendant's counsel had no objection they were admitted.

Defendant Frazier testified that he and Curry were walking down Independence Boulevard just north of Gladys Avenue when the complainant pulled up in his car and asked to be shown to his brother's house at 3821 Grenshaw, some nine blocks away; that they were headed for a bus stop but complainant said he would have his brother bring them back; that at that time complainant's head was bandaged, "he was swollen, his mouth was busted"; that after riding and directing him to his brother's house they requested to be taken back to the bus stop; that Wright said he didn't remember telling them he would do so; that they got mad, Curry grabbed Wright while in the car and told him he was a liar. Frazier then stated that he grabbed Curry and told him to turn Wright loose; that complainant said he was going to his brother's house and ran up into the house; that he got behind the wheel and "pulled off"; that they were arrested "not too much later"; that he lied to the officer about the owner-

ship of the car; that he did not rob the complainant of any money, and that he had $13.50 "worth of change"; that the police took $10 of it, but refused him a receipt.

The co-defendant, Curry, testified similarly regarding the meeting of the complainant. He admitted "grabbing and fighting" Wright when he jumped out of the car and that Wright said "he was going to get a shot"; that they were afraid and drove off with the car; that at the station the police took $5.27 from him and returned the 27 cents change, and that the $5 bill was in his hat where he put it after he saw the $10 taken from Frazier without his getting a receipt.

After all the testimony was concluded, the judge requested a female spectator to approach the bench because, as the judge stated, she wanted to say something and he wanted to hear her. The spectator told the court that Curry was her sister's child whom she raised from a baby and she was only asking that the court have mercy on him.

In the midst of final arguments, the court queried each counsel on his version of what happened.

Defendant, on appeal, charges that the trial judge stated he did not believe the complainant. Such remark, although in the record, was one of many made by the court in discussing the evidence. The record clearly indicates that the court questioned some testimony of Wright and said (p 88 of record): "I don't believe everything he said. Some of the things he said might have been true but I don't think all of the things he said were true. This man wasn't forthright about where he had been, how he received his injuries . . . I know that he saw these fellows here and that he had a conversation." The court further said (p 91 of record): "I know these boys did something but nevertheless I want to find them guilty of the crime they committed. . . . I think there is a crime here that has been committed but I am trying to make up my mind as to what

the crime was. . . . There is no question that his car was taken. I am satisfied that his car was taken. I am not too satisfied as to the money. There will be a finding of guilty."

We cannot accept defendant's argument that the trial judge characterized the complainant's testimony as unworthy of belief. He did not believe all of his testimony but did find the part essential to sustain the elements of the crime worthy of belief. The court held that a crime had been committed—"there is no question that his car was taken." Putting aside the issue of the money involved, the taking of the car from Wright was the taking of property from the person within the purview of the statute. The trial court so indicated. We cannot accept the defendant's position that no force or intimidation was employed in the taking of the property. The use of a pistol or knife is not essential to satisfy the terms of the statute which require the use of force or the threat of imminent use of force.

This being a bench trial, the trial court unfortunately got involved in the final arguments and a long colloquy with counsel. The defendant quotes remarks of the court taken out of context. When the entire statement of the court is examined it clearly establishes that the court expressed no doubt of the guilt of the defendants before it as to the taking of the automobile in what the court described as "simple robbery"—robbery while not armed. The evidence clearly sustains the finding that property—the automobile—was taken from the person of the victim, Wright, by the use of force on the part of codefendant Curry, and the circumstances indicated the threat of the imminent use of force.

The other contentions for reversal we find are without merit. The currency was admitted in evidence without objection. Furthermore, it is apparent

231

that the court did not consider it in its finding. The spectator's plea for sympathy and compassion could not be considered prejudicial. If anything, it was of benefit to the defense. The record does not justify defendant's final contention that the trial court and the state's attorney exceeded the bounds of proper conduct. We find nothing to indicate that either of them deprived defendant of a fair and impartial trial. The judgment will be affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.